# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JAMES GOREE, ) | 1:03-cv-05582-TAG HC |
| Petitioner, ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1) |
| v. ) | |
| EDWARD S. ALAMEIDA, JR., et al., ) | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |
| Respondents. ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation, serving a sentence of fifty-four-years-to-life, pursuant to a judgment of the Superior Court of California, County of Madera, following his conviction by jury of the following: (1) rape during the commission of a burglary (Cal. Pen. Code §§ 261(a)(2), 667.61(a), (d)); (2) first-degree burglary (Pen. Code § 459); and (3) intimidating a witness (Pen. Code § 136.1(b)(1)).  (CT 165-167). Petitioner's sentence was enhanced by his admission of a prior felony conviction for residential burglary, pursuant Penal Code § 667, subds. (c)-(e), § 1170.12, and §1192.7(c)(18).  (Id.; Doc. 11, Augmentation on Appeal ("AA"), p. 30; RT 8, Sentencing Hearing).

Petitioner appealed his conviction to the California Court of Appeal for the Fifth Appellate District ("5th DCA"), raising two claims: (1) failure of the trial court to instruct the jury on the definition of "force" as an element of rape; and, (2) failure to charge Petitioner with felony witness intimidation.  (Doc. 10, Exh. A).  On April 10, 2002, the 5th DCA issued an unpublished decision

affirming Petitioner's conviction. (Doc. 10, Exh. D, App.). On May 21, 2002, Petitioner filed a petition for review in the California Supreme Court, which was denied on June 19, 2002. (Doc. 10, Exh. E). In his petition for review, Petitioner raised the two arguments listed above. (Doc. 10, Exh. D). In addition, Petitioner also contended that the 5th DCA's opinion violated due process by ignoring valid legal arguments raised by Petitioner, specifically the two appellate issued raised by Petitioner in the 5th DCA. (Id.).

On April 24, 2003, Petitioner filed the instant habeas corpus petition, raising the two issues he had raised in the 5th DCA, as well as the additional argument related to the arbitrariness of the 5th DCA's decision  (Doc. 1). On August 11, 2003, Respondent filed an answer to the petition. (Doc. 10). Petitioner did not file a traverse.   Respondent concedes that Petitioner has exhausted the claims in his petition. (Doc. 10, p. 2).

## FACTUAL BACKGROUND

The Court hereby adopts the facts as summarized by the 5th DCA:

> At trial, Mirabel C. testified that on April 5, 2000, she opened the door of her apartment to take out the trash when defendant grabbed her in a "choke hold," forced her back inside and then to the bedroom where he "signed" for her to close the blinds and to take off her skirt and panties.[1] She tried to break free but was pulled back. She had trouble breathing and was seeing spots due to his choke hold. Even though he was unarmed, she was fearful for her life.
>
> He then raped her.
>
> After the act was completed, defendant began looking around the room and picking up certain items and then putting them down. He demanded money from her; however, she had none. Defendant then told her "no 911" and made a fist, gesturing to her. He left. Mirabel then called a friend, who then called the police to report the rape.
>
> A physical examination of Mirabel showed no objective signs of trauma.
>
> After being detained, defendant gave a statement at the police station. He said he had gone to Mirabel's apartment to use the phone. While he was there, she lifted up her skirt and flirted with him. She invited him to have sex; he declined because he was getting married. He then left the apartment. Five minutes later, he admitted he lied and that they did have sex, but it was consensual. In a later, transcribed, interview, defendant stated he was in need of mental help because he could not control himself and had to have sex "all the time." He indicated he wanted to write a letter of apology. In the letter, he stated:

---

[1]Mirabel does not speak English.

> "Dear Miss, I'm so sorry for what I did to you. I feel bad for fighting you today. My name is Michael. Please forgive me, Miss, it will never happen. I put that on my mom. I'm so sorry to hurt you and your family. I have a problem I have to get fixed. I need help. So please find it in your heart to forgive me for my sin, Love Mike. So sorry, Michael."

(Doc. 10, Exh. D, App., pp. 2-4).

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed on April 24, 2003, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

**II. Legal Standard of Review**

A petition for writ of habeas corpus under 28 U.S.C. 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

///

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S 133, 141 (2005), citing Williams v. Taylor, 529 U.S. at 405. A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141. Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003), citing Williams v. Taylor, 529 U.S. at 409. Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004). The AEDPA also requires that considerable deference be given to a state court's factual findings. A state court's factual findings are

presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d),  the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002).  Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

**III.  Review of Petitioner's Claims**

The instant petition alleges the following grounds for relief:

Ground 1.   In affirming Petitioner's conviction, the Court of Appeal arbitrarily ignored non-frivolous issues raised by Petitioner, and thereby deprived Petitioner of his right to a decision on his appeal reached by procedures comporting with the demands of due process.

Ground 2.   Petitioner was deprived of his Sixth and Fourteenth Amendment rights to jury trial and due process by the trial court's failure to instruct on an element of the offense.

Ground 3.   Petitioner was deprived of his Sixth and Fourteenth Amendment right to be informed of the nature of the charge against him when he was convicted of a felony on the basis of an information charging a misdemeanor.

(Doc. 1, pp. 3-4).

Each of Petitioner's claims will be addressed below.[2]

**Ground Two:      Petitioner was deprived of his Sixth and Fourteenth Amendment rights to jury trial and due process by the trial court's failure to instruct on an element of the offense.**

Petitioner contends that the trial court violated its sua sponte duty to instruct the jury on one of

---

[2] For purposes of clarity the Court will address Petitioner's claims in a sequence different from the sequence they were presented in the petition.

the elements of the offense of forcible rape, i.e., the element of "force." (Doc. 1, p. 4). Petitioner contends that in failing to instruct the jury on the definition of "force," his constitutional right to due process and a jury trial were violated. (Id.). Petitioner's contentions are without merit.

The basic scope of habeas corpus is prescribed by statute. Section 2241(c)(3) of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." Section § 2254(a) of Title 28 of the United States Code states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*.

(emphasis added). See also Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Federal habeas review is limited to claims that are set out as described above.

Petitioner's Ground Two claim challenges a jury instruction. A federal writ is not available for alleged error in the interpretation or application os state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990)("[f]ederal habeas corpus relief does not lie for errors of state law."); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000). Accordingly, a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. Estelle v. McGuire, 502 U.S. at 71-72. As the Supreme Court has stated, "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 68; Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993).

To obtain federal habeas relief for errors in the jury charge, Petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire , 502 U.S. at 71-72; Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle v. McGuire, 502 U.S. at 72. The Court must evaluate jury instructions in the context of the overall charge to the jury

1  as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982), citing
2  Henderson v. Kibbe, 431 U.S. 145, 154-155 (1977). Furthermore, even if it is determined that the
3  instruction violated Petitioner's right to due process, Petitioner can only obtain relief if the
4  unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual
5  prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)(whether the error had a substantial
6  and injurious effect or influence in determining the jury's verdict.); see Hanna v. Riveland, 87 F.3d 1034,
7  1039 (9th Cir. 1996).

8       The burden of demonstrating that an erroneous instruction was so prejudicial that it will support
9  a collateral attack on the constitutional validity of a state court's judgment is even greater than the
10 showing required to establish plain error on direct appeal. Henderson v. Kibbe, 431 U.S. at 154-155.
11 Moreover, a petitioner whose claim, as here, involves the *omission* of an instruction "bears an especially
12 heavy burden," because an omission is less likely to be prejudicial than a misstatement of the law. Id.
13 at 155.

14      In People v. Griffin, 33 Cal.4th 1015 (2004), the California Supreme Court addressed the precise
15 issue raised by Petitioner, and held, contrary to Petitioner's contention, that the trial court was under "no
16 duty to specially instruct sua sponte on the commonly understood definition of force as it is used in the
17 [state] rape statute." Id. at 1028. In People v. Griffin, the defendant was convicted of, inter alia, forcible
18 rape against the victim, the minor daughter of defendant's girlfriend. Id. at 1021. On appeal, a majority
19 of the Court of Appeal concluded that the definition of "force," as used in the forcible rape statute, has
20 a "specialized legal meaning that would not be known to the average lay juror, and requires proof of
21 'physical force substantially different from or substantially greater than that necessary to accomplish the
22 lewd act....'" Id. This is the identical argument Petitioner made in the 5th DCA, in the California
23 Supreme Court, and makes now in his petition for writ of habeas corpus.

24      In People v. Griffin, the California Supreme Court, however, reversed the Court of Appeal,
25 holding that the 1980 revisions in the forcible rape statute had eliminated the element of resistance,
26 which "was the Legislature's response to concerns that rape victims who resisted their attackers
27 oftentimes suffered greater physical injuries than victims who did not resist, and to the further
28 circumstance that prosecutors were increasingly either unable or unwilling to file rape charges where

victim resistance could not be proved." People v. Griffin, 33 Cal. 4th at 1024, quoting People v. Barnes, 42 Cal.3d 284, 302 (1986).

The California Supreme Court explained the evolution of the forcible rape element of "force" as follows:

> Whereas, prior to the 1980 amendment of section 261, conviction of forcible rape required that the accused employ that degree of force necessary under the circumstances to overcome the victim's resistance,...under the modern rape statute, *the jury no longer evaluates the element of force in terms of whether it physically prevents the victim from resisting or thwarting the attack....* '[T]he fundamental wrong at which the law of rape is aimed is not the application of physical force that causes physical harm. Rather, the law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent."

Griffin, 33 Cal.4th at 1025 (emphasis supplied). Thus, the modern state law of forcible rape does not require that "force" cause physical harm; rather, "force" plays "merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." Id. The California Supreme Court's explanation of the role of "force" in the crime of forcible rape is directly contrary to the position urged by Petitioner in this action.[3]

In People v. Griffin, the California Supreme Court also rejected the contention - also made by Petitioner in the instant case - that the failure to define "force" as a term of art in the context of forcible rape would lead to situations where "painful misunderstandings become forcible sex crimes." (Doc. 10, Exh. D, App., p. 10). In rejecting such a contention, the California Supreme Court reasoned as follows:

> When two adults engage in *consensual* sexual intercourse, whether with or without physical force greater than that normally required to accomplish an act of sexual intercourse, the forcible rape statute is not implicated. The gravamen of the crime of forcible rape is a sexual penetration *accomplished against the victim's will* by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. As reflected in the surveyed case law, in a forcible rape prosecution the jury determines whether the use of force served to overcome the will of the victim to thwart or resist the attach, *not* whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resisting her attacker. The Legislature has never sought to circumscribe the nature or type of forcible conduct that will support a conviction of forcible rape, and indeed, the rape case law suggests that even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction."

People v. Griffin, 33 Cal.4th at 1027 (emphasis in original).

---

[3] In his Opening Brief in the 5th DCA, Petitioner argued that "[f]orce has to mean something more than 'against the will of the alleged victim' and something more than the act of intercourse itself...." (Doc. 10, Exh. D, App., p. 9).

Thus, the question for the Griffin jury was "simply whether defendant used force to accomplish intercourse with [the victim] against her will, not whether the force he used overcame [the victim's] physical strength or ability to resist him." People v, Griffin. 33 Cal. 4th at 1028. From that perspective, the California Supreme Court concluded that the trial court "was under no duty to specially instruct sua sponte on the commonly understood definition of force as it is used in the rape statute." Id. Applying the California Supreme Court's reasoning in People v. Griffin to the instant case, it is patent that no state law violation occurred. Because Petitioner's argument hinges entirely on the assumption that some special meaning of the word "force" requires a defining jury instruction, and because the California Supreme Court has rejected such an assumption as erroneous, Petitioner's argument cannot be sustained.

Because Petitioner has failed to make out even a violation of state law, he necessarily fails to establish any federal constitutional violation in the trial court's failure to give a sua sponte instruction on "force." The California Supreme Court has found no error under state law. A federal court must defer to state court interpretations of state law unless the interpretation violates due process. Estelle v. McGuire, 502 U.S. at 71-72; Missouri v. Hunter, 459 U.S. 359 (1983)(federal court bound to accept state court's construction of its own statutes); Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993); ; McSherry v. Block, 880 F.2d 1049, 1053 (9th Cir. 1989)(federal habeas court bound by state court's construction of its own penal statute). Moreover, as mentioned above, the "fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. at 71-72. Here, no state court violation occurred. No federal violation occurred because no "clearly established" federal law requires that California trial courts sua sponte instruct juries on a definition of "force" under California's forcible rape statute. Thus, the state court's decision in this regard was neither contrary to nor an unreasonable application of clearly established federal law.

Moreover, habeas relief is warranted only if the constitutional error at issue is structural error, or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795-796 (2001), quoting Brecht v. Abrahamson, 507 U.S. at 637. Here, any instructional error is properly characterized as a trial error, rather than a structural error, because, as the California Supreme Court in People v. Griffin indicated, "force" is not a separate and

distinct element of the offense of forcible rape, but rather, it "plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." People v. Griffin, 33 Cal. 4th at 1025.  Applying the Brecht v. Abrahamson federal harmless error standard, the Court finds that the error, if any, would have been harmless.  Brecht v. Abrahamson, 507 U.S. at 637-638.  Because the instant case is on collateral review, Respondent need only show that the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." Id. at 623, quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946).

Here, the jurors could have reasonably believed the victim's testimony that she did not consent to intercourse with Petitioner.  Given the substantial evidence that Petitioner did in fact overcome the victim's lack of consent through his conduct, instructing the jury on the definition of "force," as that term has been explained in People v. Griffin, could not have reasonably had an effect on the jury's deliberations, was not actually prejudicial, and was therefore harmless.  Brecht v. Abrahamson, 507 U.S. at 622- 623, 638.  Hence, Ground Two must be denied.

   **Ground Three:**  **Petitioner was deprived of his Sixth and Fourteenth Amendment right to be informed of the nature of the charge against him when he was convicted of a felony on the basis of an information charging a misdemeanor.**

Following the preliminary hearing, Petitioner was charged by criminal information with, inter alia, one count of violating California Penal Code § 136.1(b)(1), attempting to prevent and dissuade the victim from making a report of her victimization.  (CT 15).  Under California law, § 136.1(b)(1) is a "wobbler." People v. Neely, 124 Cal.App.4th 1258, 1261 (2004).  California Penal Code § 17(b) authorizes the reduction of "wobbler" offenses–crimes that, in the trial court's discretion, may be sentenced alternately as felonies or as misdemeanors–upon imposition of a punishment other than state prison or by declaration as a misdemeanor after a grant of probation.  Pen. Code § 17(b)(1), (3).  Put another way, a wobbler is "a special class of crime which could be classified and punished as a felony or misdemeanor depending upon the severity of the facts surrounding its commission." People v. Superior Court (Perez), 38 Cal.App.4th 347, 360 n. 17 (1995).

During trial, the prosecutor realized that the information expressly referred to Count Three, the Penal Code § 136.1(b)(1) charge, as a "misdemeanor" and sought leave of court to amend it to a felony

1  as a "typographical error." (AA, p. 10). The prosecutor pointed out that, as a wobbler, the evidence
2  required was the same whether the crime was considered a misdemeanor or a felony. (Id.). Petitioner
3  objected and argued prejudice, although Petitioner's counsel never explained how Petitioner would be
4  prejudiced by the amendment. (Id.).

5  Petitioner claims now that the amendment permitted by the trial court was never acted upon by
6  the prosecutor and therefore "Petitioner remained charged with a misdemeanor but was convicted of a
7  felony." (Doc. 10, Exh. D, p. 18). The 5th DCA treated the issue as one of "notice" and concluded that
8  Petitioner had not been prejudiced by the amendment since, as a wobbler, the charge itself did not
9  change, only the possibility of receiving a felony sentence had changed. Thus, Petitioner "was given
10 notice and opportunity to defend." (Doc. 10, Exh. E, App., p. 5). The Court agrees with the 5th DCA's
11 ultimate conclusion. However, because Petitioner's argument is twofold, i.e., variance between the
12 charging document and the crime for which he was committed *and* lack of notice, the Court will address
13 both issues.

14 "The Sixth Amendment guarantees a criminal defendant a fundamental right to be clearly
15 informed of the nature and cause of the charges in order to permit adequate preparation of a defense."
16 Sheppard v. Rees, 909 F.2d 1234, 1236 (9th Cir. 1990). The notice provision of the Sixth Amendment
17 is incorporated within the Due Process Clause of the Fourteenth Amendment and is
18 fully applicable to the states. In re Oliver, 333 U.S. 257, 273-274 (1948); see Gray v. Raines, 662 F.2d
19 569, 571 (9th Cir. 1981).

20 Here, Petitioner was not denied notice of the charge. The amendment only made it possible that
21 the trial court, in its discretion, could sentence Petitioner to state prison as well as to county jail or
22 probation. The charge itself, the elements of the charge, the evidence required to prove the charge, the
23 evidence adduced at the preliminary hearing, the prosecution's theory of the case, and the defense all
24 were identical regardless of whether the wobbler charge resulted in a felony or misdemeanor sentence.
25 Under these circumstances, Petitioner was not denied adequate notice of the charge.

26 Petitioner's characterization of events as having been charged with a misdemeanor but convicted
27 of a felony is inaccurate. The prosecutor was granted leave to amend, Petitioner was put on notice that
28 ///

1   Count Three was being charged and tried as a felony, and any incidental failure to interlineate the word
2   "felony" in the charging document is irrelevant and de minimis.
3          Under California law, a trial court may "order or permit an amendment of an indictment,
4   accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any
5   stage of the proceedings...." Cal. Pen. Code § 1009.  In granting the motion to amend, the trial court
6   indicated that it would "modify the instruction" relating to intimidation of a witness. (AA, p. 10).  The
7   instruction on § 136.1(b)(1) was accordingly modified to reflect that it was a felony. (CT 115).  Thus,
8   the jury was made aware that it was deliberating on a charge considered to be a felony.
9          While no actual inter-lineation reflecting the felony status of the charge was made on the
10  charging document itself, the Court considers this irrelevant and de minimis.   Under California law,
11  "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be
12  affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial
13  right of the defendant upon the merits." Cal. Pen. Code, § 960.
14         A variance in proof occurs when "the charging terms of the indictment are left unchallenged, but
15  the evidence offered at trial proves facts *materially different* from those alleged in the indictment." U.S.
16  v. Alvarez, 972 F.2d 1000, 1004 (9th Cir. 1992), quoting United States v. Von
17  Stoll, 726 F.2d 584, 586 (9th Cir. 1984))(emphasis supplied).  A variance requires reversal only when
18  the defendant was prejudiced thereby. Id.
19         Here, Petitioner's contentions notwithstanding, he has not demonstrated any prejudice resulting
20  from the trial court's granting of the motion to amend.  This was the conclusion reached by the 5th DCA
21  in its opinion, and it is also the conclusion reached by this Court.  The facts adduced at trial supported
22  a conviction on the wobbler, either as a felony or a misdemeanor.  The evidence adduced by the
23  prosecution was not "materially different" from those alleged in the information.  Petitioner has not
24  demonstrated how the amendment impacted his rights in any way under either state or federal law. Thus,
25  the state court's rejection of this argument was neither contrary to nor an unreasonable application of
26  clearly established federal law.  Hence, Ground Three must be denied.
27  ///
28  ///

**Ground One:**   **In affirming Petitioner's conviction, the Court of Appeal arbitrarily ignored non-frivolous issues raised by Petitioner, and thereby deprived Petitioner of his right to a decision on his appeal reached by procedures comporting with the demands of due process.**

Petitioner contends that the 5th DCA "arbitrarily ignored non-frivolous issues" raised by Petitioner, thereby violating his constitutional due process right. (Doc. 1, p. 3). This argument is without merit.

As to Ground Two, Petitioner maintains that the 5th DCA failed to address the issue raised by Petitioner, i.e., whether the "force" used in a rape "must be of a kind that might reasonably induce fear in the mind of the victim," and instead concluded that the degree of force need not be greater than that required to accomplish the act of intercourse. (Doc. 1, p. 3). As discussed previously, however, this was precisely the holding of the California Supreme Court in People v. Griffin.

People v. Griffin, 33 Cal.4th at 1028 ("The question for the jury in this case was simply whether defendant used force to accomplish intercourse with [the victim] against her will, not whether the force he used overcame [the victim's] physical strength or ability to resist him."). Thus, although at the time Petitioner originally filed his petition, this issue had not been decided by the state's highest court, the People Griffin decision resolved this issue in favor of Respondent and against Petitioner. As mentioned, this Court must defer to a state court's interpretation of its own laws, and here, the 5th DCA's decision anticipated the holding in People v. Griffin and is entirely consistent with its result. Accordingly, the state court's decision was not contrary to nor an unreasonable application of clearly established federal law.

As to Ground Three, Petitioner maintains that the prosecution "never actually filed or inserted any amendment" and therefore Petitioner "remained charged with a misdemeanor, but was convicted of a felony." (Doc. 1, p. 4). The Court is unable to parse out of Ground One a constitutional issue that is separate and distinct from Ground Three, which raises the identical issue. Since the Court has already resolved Ground Three against Petitioner, no basis exists to conclude in Ground One that the 5th DCA's decision somehow violated Petitioner's due process rights.

///

///

**ORDER**

Accordingly, for the reasons set forth above, the Petition for Writ of Habeas Corpus (Doc. 1), is DENIED with prejudice.

IT IS SO ORDERED.

Dated:   **September 27, 2006**                                         **/s/ Theresa A. Goldner**
**j6eb3d**                                                                                  UNITED STATES MAGISTRATE JUDGE